IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GAJANAN M. ALTIDOR,<br>Plaintiff,<br><br>vs.<br><br>COMMONWEALTH(S); CHARLES A.<br>ROZZO *Housing Authority Officer Badge<br>#27909*; OFFICER HORNYAK,<br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 14-356<br>Judge Mark R. Hornak/<br>Chief Magistrate Judge Maureen P. Kelly<br><br>Re: ECF Nos. 40 & 50 |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment filed by Defendants Charles Rozzo ("Rozzo") and Steven Hornyak ("Hornyak"), ECF No. 40, be granted and that their Motion to Strike/Disregard Plaintiff's Response to Rule to Show Cause (the "Motion to Strike"), ECF No. 50, also be granted.

## II. REPORT

### A. Background Facts

Gajanan Altidor ("Plaintiff") has filed a civil rights Complaint, alleging that his constitutional rights were violated by the Defendants. In particular, Plaintiff alleges that Defendants Rozzo and Hornyak, who are police officers for the Allegheny County Housing Authority (the "Housing Authority"), falsely arrested him and used excessive force against him and that these actions violated Plaintiff's Fourth Amendment rights. ECF No. 7 at 5.

On October 2, 2013, the Housing Authority police initially stopped Plaintiff because a juvenile had approached officers to tell them that his bicycle had been stolen and the officers

subsequently observed Plaintiff with the stolen bicycle. ECF No. 40-3 ¶ 4. After the officers asked Plaintiff his name, they radioed his name back to the dispatch center. The dispatch center informed the officers that Plaintiff had a warrant for his arrest. Id. ¶¶ 7 – 9. Consequently, the officers handcuffed Plaintiff and arrested him. Id. ¶ 10. A search, incident to the arrest, lead the police to discover heroin on Plaintiff's person. Id. ¶¶ 11 – 12. On October 7, 2015, Plaintiff pled guilty to a drug possession charge based upon his possession of the heroin. ECF No. 40-5. He was sentenced to a minimum of 9 months to a maximum of 18 months incarceration, plus one year of probation. ECF No. 40-2 at 5, 7 – 8.

The Complaint initiating the instant federal action was docketed on May 12, 2014. ECF No. 7. On November 19, 2015, this Court issued a Case Management Order, setting discovery deadlines and deadlines to file pre-trial statements and summary judgment motions. ECF No. 32.

**B. Plaintiff's Response to the Order to Show Cause is Untimely and Substantively Deficient.**

Defendants timely filed their Motion for Summary Judgment on March 31, 2016. ECF No. 40. On April 4, 2016, this Court issued a Scheduling Order directing Plaintiff to file his response to Defendants' Motion for Summary Judgment no later than May 4, 2016. ECF No. 42.[4] Plaintiff failed to file a response to the Defendants' Motion for Summary Judgment by May 4, 2016. Plaintiff did not request an extension of time to file his response. Consequently, on May 17, 2016, this Court issued two Orders to Show Cause. ECF Nos. 46 and 47.

---

[4] Also on April 4, 2016, the Court issued a second Order, ECF No. 43, noting that Plaintiff had failed to file his Pretrial Statement by March 21, 2016, as required by the Court's initial Case Management Order, ECF No. 32, which required Plaintiff to file his Pretrial Statement no later than March 21, 2016. Consequently, the Court ordered that he file his Pretrial Statement by May 4, 2016. On April 18, 2016, Plaintiff filed a document that he titled as his Pretrial Statement. ECF No. 45.

In the Order to Show Cause, docketed at ECF No. 47, Plaintiff was ordered to show cause why the case should not be dismissed due to Plaintiff's failure to file a response by April 4, 2016 to the Defendants' Motion for Summary Judgement as previously ordered by the Court. ECF No. 42. Plaintiff was ordered to file his response to the Order to Show Cause no later than May 31, 2016. Plaintiff again failed to comply with this Order and did not file a response by May 31, 2016.

In the Order to Show Cause, docketed at ECF No. 46, the Court ordered Plaintiff to show cause why the Defendant "Commonwealth(s)" should not be dismissed given that the Commonwealth of Pennsylvania enjoys Eleventh Amendment immunity from suit in federal Court. Plaintiff was ordered to file his response to the Order to Show Cause no later than May 31, 2016. Plaintiff again failed to comply with Order and did not file a response by May 31, 2016.

On June 10, 2016, without leave of Court, Plaintiff untimely filed what he titled as "Response to Order to Show Cause" (the "Response"). ECF No. 49.

Plaintiff's Response is clearly untimely. In addition, Plaintiff, in the untimely Response, does not make clear whether this filing is a response to ECF No. 46, or to ECF No. 47, or to both. If the Response was intended to respond to the Order filed at ECF No. 47, it is substantially deficient because Plaintiff does not address the four bases for summary judgment asserted by Defendants, including Defendants' argument that the claims are <u>Heck</u> barred and Defendants are entitled to qualified immunity.

Plaintiff has consistently failed to adhere to deadlines clearly established by the Court. As a consequence of Plaintiff untimely filing his Response, Defendants filed the Motion to Strike Plaintiff's Response as untimely filed. ECF No. 50. In the Motion to Strike, Defendants request

3

that the Court strike his Response or disregard his Response in determining whether the matter should be dismissed for Plaintiff's failure to respond to their Motion for Summary Judgment. Defendants argue that, even if this Court considers Plaintiff's Response, Plaintiff does not provide any explanation in the Response as to why he failed to meet this Court's deadlines of April 4, 2016 and May 31, 2016 to file his Response. Defendants point out that Plaintiff "recites the same generic and disjointed narrative contained within his previous filings." ECF No. 50 ¶ 11.

Upon this Court's review, we find that Plaintiff's Response is untimely as it was filed beyond the May 31, 2016 deadline. Because both the time for filing his response to the Order to Show Cause and also the time for filing the Response to the Defendants' Motion for Summary Judgment passed without Plaintiff filing what he was required to file, the Court should grant Defendants' Motion to Strike Plaintiff's Response in light of the fact that Plaintiff has not requested before or after the deadline expired any extension of time and he has not shown, as is his burden, excusable neglect for his failure to file by the deadline. See Fed.R.Civ.P. 6(b).[5]

---

[5] Fed.R.Civ.P. 6(b) provides in relevant part:

**(b) Extending Time.**
    **(1)** *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:
        **(A)** with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
        **(B)** on motion made after the time has expired if the party failed to act because of excusable neglect.

### C. Even if Plaintiff's Response was Timely, Summary Judgment is Warranted.

#### 1. Failure to Comply with Local Civil Rule 56

Even if Plaintiff's "Response" is deemed to have been timely filed and deemed to have been a Response to Defendants' Motion for Summary Judgment, it is respectfully recommended that the Defendants' Motion for Summary Judgment be granted because Plaintiff's Response is deficient under Local Civ. Rule 56, given that it does not specifically deny the facts asserted in the Defendants' Statement of Material Facts, paragraph by paragraph. Consequently, to the extent that Plaintiff's Response, ECF No. 49, fails to comply with any of the requirements of Local Rule 56, the Defendants' Statement of Material Facts are deemed to be admitted by Plaintiff for purposes of ruling on the Motion for Summary Judgment. Nesselrotte v. Allegheny Energy, Inc., No. CIV.A. 06-01390, 2009 WL 230703, at *11 (W.D. Pa. Jan. 30, 2009) ("This Court has previously deemed admitted material facts set forth in the moving party's statement of undisputed material facts where the non-moving party has failed to specifically deny or otherwise controvert those facts in a separate concise statement pursuant to L.R. 56.1(E)."). This deemed admission of the Defendants' properly supported facts is sufficient to grant summary judgment to the Defendants.

#### 2. Determination on the Merits

Even if we did not deem the Defendants' Statement of Material Facts admitted due to Plaintiff's failure to respond properly, we would still recommend the grant of summary judgment.

Petitioner's Fourth Amendment claim of false arrest/seizure fails to survive summary judgment. The legal principles are clear "[i]It is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the

requirements of the Fourth Amendment." Sheare v. Borough of Olyphant, No. 3:11-CV-1639, 2012 WL 140233, at *4 (M.D. Pa. Jan. 18, 2012) (citing Baker v. McCollan, 443 U.S. 137, 144 (1979)). Accord Manning v. Basey, 541 F. App'x 742, 743 (9th Cir. 2013). ("Summary judgment was proper on Manning's Fourth Amendment claim because an arrest based on a facially valid warrant is insufficient for such a claim."). "Law enforcement officers who arrest solely on the basis of such a warrant are immune from suits alleging a Constitutional violation." Kis v. Cnty. of Schuylkill, 866 F.Supp. 1462, 1469 (E.D.Pa.1994).

Here, Plaintiff does not even allege, yet alone, adduce any evidence that the probation violation warrant on which the officers arrested him did not meet the requirements of the Fourth Amendment. See, e.g., Rogers v. Cartagena, No. 10 CIV. 9285 JPO, 2013 WL 1285169, at *5 (S.D.N.Y. Mar. 28, 2013) ("Plaintiff has pointed to no record evidence suggesting that he can carry the 'heavy burden' of showing that the search warrant was invalid").[6] Nor does he adduce any evidence that the initial encounter, even if we deem it to be a "Terry stop," was improper, given the report of the juvenile regarding his bike and the police observation of Plaintiff with the

---

[6] We note that Plaintiff asserts that Defendant Rozzo "turned his radio down[.]" ECF No. 40-2 at 26, line 6. Plaintiff suggested that the Defendant Rozzo did not hear dispatch indicate to Officer Rozzo that there was an outstanding warrant for Plaintiff's arrest. However, what Defendant Rozzo heard or not over the radio is pure speculation by Plaintiff in the face of Rozzo's affidavit wherein he avers that "Dispatch returned information that the name "Delmario Holmes" was a known alias for Mr. Altidor…. Dispatch also returned information that Mr. Altidor had a warrant out for his arrest due to a probation violation." ECF No. 40-3 ¶¶ 8 – 9. However, Plaintiff's speculation as to what Officer Rozzo heard or did not hear is not sufficient to overcome the Defendants' Motion for Summary Judgment. Davis v. Harlow, No. CIV.A. 11-1506, 2014 WL 4250382, at *7 (W.D. Pa. Aug. 26, 2014) ("Speculation is not a substitute for personal knowledge, and conclusory assertions on summary judgment, even sworn to, are insufficient to create a genuine issue of material fact.") , aff'd, 632 F. App'x 687 (3d Cir. 2015); Albritton v. Sec'y of State, No. 5:09-CV-00385 CAR, 2010 WL 4312868, at *8 (M.D. Ga. Oct. 25, 2010) ("This type of speculation about what another heard or knew is irrelevant and insufficient to defeat summary judgment.").

.

juvenile's bike was more than sufficient to constitute reasonable suspicion as a matter of law. As for any search which the Defendants conducted of Plaintiff's person, there can be no Fourth Amendment violation as a matter of law because a search of the arrestee's person incident to a lawful arrest is constitutional. United States v. Robinson, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment. This general exception has historically been formulated into two distinct propositions. The first is that a search may be made of the person of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee."). Accordingly, the motion for summary judgment filed by the Defendants should be granted as to Plaintiff's Fourth Amendment claims of unlawful arrest or seizure and/or search.

Furthermore, there is no evidence of record to support Plaintiff's burden to show that the officers used excessive force in the effectuation of the arrest as is his burden. Grier v. Scarpine, No. CIV. A. 04-1888, 2008 WL 655865, at *1 (W.D. Pa. Mar. 5, 2008) ("plaintiff's burden for an excessive force claim [is] as follows: 'To succeed on an excessive-force claim under the Fourth Amendment, the plaintiff bears the burden of showing: '(1) an injury [to the plaintiff] (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable.' ' ") (quoting Huang v. Harris County, 264 F.3d 1141 (Table), 2001 WL 822534, *9 (5th Cir. 2001)). Moreover, as explained by one court, *de minimis* use of force, evidenced by *de minimis* injuries, fails as a matter of law to establish a Fourth Amendment excessive force claim:

> In evaluating an excessive force claim, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. Generally, the force used must rise above the de minimis level in order for a constitutional claim to arise. See

7

> *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000). With these standards in mind, several federal courts have granted summary judgment to defendants on Fourth Amendment § 1983 excessive force claims, based upon a finding that the force applied by defendant police officers was de minimis. *See, e.g., Nolin v. Isbell*, 207 F.3d at 1258 ("the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."); *Garcia v. County of Bucks*, 2001 WL 311253 (E.D.Pa. Mar. 27, 2001) (dismissing Fourth Amendment excessive force claim upon finding that grabbing plaintiffs coat and arms and handcuffing him in the course of his arrest was a de minimis use of force, and therefore not a violation of the Fourth Amendment); *Bensinger v. Mullen*, 2000 WL 1100781 (E.D.Pa. Aug. 4, 2000) (finding that where force used by police in effectuating arrest and injuries sustained by plaintiff therefrom were de minimis, the Fourth Amendment was not violated as a matter of law); *Allred v. Brown*, 95 Civ. 4490, at 5 (S.D.N.Y. Sept. 17, 1999) (RMB) (summary judgment granted to defendant on finding that grabbing the plaintiff and bringing him to the ground was de minimis use of force).

Nardini v. Hackett, No. CIV. A. 00 CV 5038, 2001 WL 1175130, at *6 (E.D. Pa. Sept. 19, 2001).

Plaintiff's own deposition testimony establishes that the force used to effectuate his arrest, which included the wrapping of the officer's leg around Plaintiff's leg, resulting in a bruise to Plaintiff's leg and a "choke hold" resulting in a "tight" neck was not excessive or objectively unreasonable and, as a matter of law, constituted nothing more than a *de minimis* use of force.

After being asked what transpired after the dispatch call was made, Plaintiff asserted the following in connection with the force used to effectuate the arrest:

> Q. Okay. And then at that point, with that information, was that when they placed you in handcuffs?
> . . . .
>
> A . . . . And then that's when they began to put me into arrest, he put me, like in a choke hold, wrapped his leg around me – I mean -- well, they did – I guess --well, it was like a -- it was like a team effort, so it was like one was behind, the other in front of me.
>
> Q. Um-hum.

8

      A. So it seemed like he did like – like a little wrestling move –

      Q. Um-hum

      A. -- for them to, like, cuff me, you know what I mean? But there wasn't even no need for that, because I wasn't resisting or anything.

ECF No. 40-2 at 26, lines 1 – 37 – p. 27, lines 10 – 22. After the Defendants conducted the search incident to the arrest, they discovered heroin in Plaintiff's pocket and then took him to the police car and then drove him to the police station. Id. at 33, lines 3 – 23.

During the deposition, Plaintiff was also asked what force the officers specifically used and what injuries he sustained. Plaintiff answered as follows:

      Q. Um-hum. And at any point in this time did the officers pull out any weapons, any pepper spray, guns, stun guns, Tasers, anything like that, or was it just the handcuffs?

      A. To what – no, they didn't do none of that.

      Q. Okay.

      A. They didn't have to, because I wasn't like, you know, a big problem.

      Q. Right.

      A. You know, the whole time I wasn't like, trying to fight back or nothing.

      Q. All right. And were you – did you have any injuries or anything like that, as a result of the –

      A. I had some – I had an injury that had been already into my right, leg, I was – actually, I was struggling with a hill. And it was , how should I say, like re-bruised.

      Q. Um-hum.

      A. Because it was like, just in the process of healing. So it was, like, in the process of that arrest, and wrapping his arm, I'm going – wrapping his leg

around my leg and having me in a choke hold, that was aggravating my knee, was aggravated, and my neck just felt like tight, you know what I mean?

Q. Okay. And you said – so that injury on your leg was, like – you said it was, like, re-bruised?

A. Yeah, it was – it was an injury that I had already had on my leg.

Id. at 34, line 18 – p. 35, lines 1 – 24.

The Court has no hesitancy in concluding that no reasonable jury could find for Plaintiff on an excessive force claim based on the foregoing evidence taken in the light most favorable to Plaintiff, as we are required to do. Fourth Amendment jurisprudence has long recognized that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," Graham v. Connor, 490 U.S. 386, 396 (1989). Instantly, the wrapping of the officer's leg around Plaintiff's leg (self-evidently, a method of preventing running away), resulting in the re-bruising of Plaintiff's previously injured leg, and the "choke-hold" which resulted in Plaintiff experiencing a "tight" neck, cannot be found by any reasonable jury to constitute anything greater than *de minimis* force reasonably necessary to effectuate the arrest and certainly not excessive.

Accordingly, the Defendants' Motion for Summary Judgment should be granted.[7]

## III. CONCLUSION

For the reasons set forth herein, it is recommended that the Defendants' Motion for Summary Judgment, ECF No. 40, be granted and that the Defendants' Motion to Strike, ECF No. 50, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule

---

[7] Alternatively, the Defendants' Motion for Summary Judgment should be granted on the grounds that they are entitled to qualified immunity.

10

72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

July 1, 2016

s/Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Mark Hornak
United States District Judge

GAJANAN M. ALTIDOR
2237 East Hills Drive
Apt # 1
Pittsburgh, PA 15221

All counsel of record via CM-ECF